UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | Case No. 3:06-00204 |
| | ) | Judge Echols |
| **BARRY R. STOKES.** | ) | |

## ORDER

Defendant Barry R. Stokes has been charged in a six-count Indictment with embezzling approximately $220,000.00 in pension benefits in violation of 18 U.S.C. § 664. Pending before the Court is Defendant's Motion for Revocation of Detention Order (Docket Entry No. 15), to which the Government has responded in opposition (Docket Entry No. 18). Defendant seeks review and revocation of the Magistrate Judge's Order (Docket Entry No. 13) which requires Defendant to be detained on the grounds that he poses a serious risk of flight and/or would attempt to obstruct justice if he were freed pending trial.

Under the United States Code, a defendant shall be detained pending trial if, after a hearing, the judicial officer finds that no condition or set of conditions will reasonably assure the defendant's appearance and the safety of the community. 18 U.S.C. § 3142(e). The factors to be considered in determining whether to release a defendant pending trial are set forth in 18 U.S.C. § 3142(g) and include: the nature and circumstances of the offense charged; the weight of the evidence against the person; and the

1

nature and seriousness of the danger posed by the defendant's release.

If a person is ordered detained by a Magistrate Judge, that person "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). The review in the district court is de novo, although the district court "may conduct its review and base its decision on the evidence presented to the magistrate at the detention hearing." United States v. Howard, 2006 WL 3300462 at *4 (N.D. Tex. 2006).

In this case, Defendant's motion is focused solely on the issue of whether he poses a danger to the community. In this vein, Defendant asserts he has "a substantial outpouring of support from his family members and friends, as demonstrated by their attendance at the detention hearing[.]" Assuming this to be true, the argument does not address the potential risk of flight Defendant may pose which was the primary basis which the Magistrate Judge used in ordering pre-trial detention.

"Detention may be based on a showing of either dangerousness or risk of flight; proof of both is not required." United States v. Hayes, 2006 WL 3201927 at *3 (S.D. Ind. 2006) citing, United States v. Fortna, 769 F.2d 243, 249 (5th Cir. 1985). "The government must prove risk of flight by a preponderance of the evidence, . . . and it must prove dangerousness to any other person

2

or to the community by clear and convincing evidence." <u>United States v. Cisneros</u>, 328 F.3d 610, 616 (10th Cir. 2003).

In this case, there is abundant evidence to support the Magistrate Judge's conclusion that Defendant poses a risk of flight if he is freed while awaiting trial. That evidence, which was developed during the detention hearing before the Magistrate Judge, shows the following with regard to Defendant's potential for flight.

1Point Solutions, now in bankruptcy, was a third-party administrator of pension and health benefit funds in Dickson, Tennessee. Defendant was the President and Chief Executive Officer and had direct control of its funds. The Indictment in this case arose as a result of Defendant's alleged embezzlement of funds from 1Point.

The Federal Bureau of Investigation launched an investigation into 1Point. During a review of "recent documents" under the start button of Defendant's office computer, a 1Point employee found that a 290-page document entitled "How to Change Your Identity" had been downloaded on August 29, 2006. That document discussed, among other things, how to obtain fraudulent identity documents (such as passports and driver's licenses), how to fake one's death and cautioned that success in changing an identity required careful thought and planning. The document further advised that anyone seeking to change his or her identity should accumulate as much

3

cash as possible.

In September 2006, Defendant cashed six checks from 1Point Solutions. These included checks in the amounts of $9,827.56; $9,882.65; $9,789.74; $9,865.25; $9,845.35 and $9,795.35. All of the checks were made out to the Defendant and each was just below the $10,000 amount which would trigger the filing of a Currency Transaction Report with the Internal Revenue Service.

Four of the referenced checks were cashed after a Temporary Restraining Order ("TRO") was issued by Judge Haynes in relation to civil litigation which is pending against Defendant and 1Point Solutions. The TRO was issued on September 13, 2006 and was personally served on Defendant at approximately 8:00 p.m. on that date. Even though the TRO specifically prohibited the movement, transfer or dissipation of any assets of 1Point or Defendant, Defendant cashed nearly $40,000 worth of checks from 1Point.

During this same time period, an employee of 1Point who was in charge of managing and cataloguing Defendant's extensive Japanese art collection noticed that a cabinet which contained Defendant's most valuable prints was moved from the Defendant's home sometime between September 14, 2006 and October 5, 2006. The ongoing investigation suggested that Defendant called a friend who deals in Japanese art in late September 2006 and asked him to help Defendant move the prints. During the course of the conversation, the dealer was told by Defendant not to cooperate with the authorities should

4

they make any inquiries.

Because of pending bankruptcy proceedings, Defendant has no access to either of his former residences. His wife has indicated she has no intention of allowing Defendant to live in their home in Austin, Texas.

In addition to this criminal case, Defendant is involved in five pending civil actions. In those cases it is alleged that nearly ten million dollars in pension benefits have been stolen.

Upon de novo review, the Court finds that there is a serious risk that the Defendant will flee and that there are no release conditions that will reasonably assure his appearance when required. 18 U.S.C. § 3142(f)(2)(A). Not long before the Indictment was returned, a document detailing how to change identities was downloaded on Defendant's office computer. Shortly thereafter, Defendant cashed numerous checks, all slightly below the reporting limit and most in violation of a TRO which had been entered. Additionally, Defendant appears to have been marketing his artwork, again in violation of the TRO. All of these things strongly suggest that Defendant would likely attempt to flee. Further, Defendant's former residences are no longer available to him and his wife does not want him in their residence in Austin, Texas, making the prospect of some form of home detention unworkable and unrealistic. While Defendant in his Memorandum states that he has strong family support, there is no evidence of

5

that in the record.

Given these facts, there is a serious risk that if Defendant were released pending trial, he will abscond and there are no conditions or combinations of conditions which will reasonably assure Defendant's attendance as required. Accordingly, Defendant's Motion for Revocation of Detention Order (Docket Entry No. 15) is hereby DENIED and Defendant shall continue to be detained under the same provisions as those set forth in the Magistrate Judge's October 20, 2006 Order (Docket Entry No. 13).

It is so ORDERED.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE